Good morning. May it please the Court, Counsel, I am Jay Wigman, an Assistant Appellate Defender with the Office of the State Appellate Defender. Counsel for Defendant Appellant Scott Smado, who asserts that where the defendant established that his trial attorney labored under per se conflict by contemporaneously representing the jailhouse informant whose testimony was the key to the defendant's conviction, and where counsel was ineffective for failing to call known witnesses, this matter should be remanded for a new trial because the state failed at the third stage evidentiary hearing to rebut the substantial showings of the constitutional violation of ineffective assistance of counsel that this Court previously found had been made at the second stage. Now I know that the Court is familiar with the facts of this case, even though it dates back about 20 years at this stage. And I promise not to belabor the facts, but, and part of the reason that I know that the Court is prepared is not just because of its general preparation, but because Justice Litton, I believe you sat on the panel that reversed and remanded at the first stage hearing. And Justice O'Brien and Wright, I believe you both were on the panel that heard this matter, or at least ruled on the matter at the second stage and remanded it for a third stage hearing. But there are a couple of aspects of the trial that I would like to emphasize, and then I'd like to briefly discuss this Court's ruling at the second stage and the subsequent proceedings at the third stage by the trial court. Regarding the trial matters, there are two things that are important, and before getting to that, I'll briefly introduce the key players in this matter. The trial attorney, and he had been trial attorney for about nine months before the matter proceeded to trial, was he had indicated at one stage that another attorney would be entering an appearance, and that attorney, Thomas Glasgow, entered an appearance on what was scheduled to be the beginning of trial on November 16th, 1998. At that time, Judge Lequar sat in, not so much as the trial judge, he in fact did not preside over the trial, but he was there for administrative matters as the matter was getting ready for trial. At that time, the state announced that it had a witness who was a jailhouse informant who had apparently known the defendant for a matter of about two weeks, Charles Faygill. And Charles Faygill had given his statement to the state's attorney's office apparently the night before, and that was just being disclosed to the trial court and to counsel. When Attorney Glasgow, who had met with the state and the informant, Mr. Faygill, and asked for discovery about that, the state said that it hadn't yet made an official deal with Mr. Faygill because the state first needed to speak to Mr. Faygill's attorney. And the state indicated that that attorney was Mr. Brenner, who is the defendant's instant counsel in this case. Despite that notation, no action was taken and the trial was held two days later. This trial was presided over by Judge White. At that trial, interestingly, there was the unusual occurrence of the informant identifying not just the defendant, but the defendant's counsel at trial. When he stated that that was his attorney, pointed him out in court and said that he was not the defendant's counsel. He also discussed how the two, both Defendant Smato and Mr. Faygill, had talked about the fact that they had the same attorney, and he was asking for some information about the attorney and what Mr. Smato thought he might be able to do for Mr. Faygill. So we have the in-court identification at that time and indications that this is the person who he has selected as his attorney. The other aspect of the trial that is important to note for purposes of this proceeding is that Judge Glasgow, I'm sorry, not Judge Glasgow, Mr. Glasgow was prevented from asking the complainant whether she had been dating a Chicago Heights police officer. The state objected, and outside the presence of the jury, it was indicated by counsel that it was part of the defense theory that the complainant had actually been battered by somebody else, and that it was specifically a Chicago Heights police officer. He stated that this was the theory, but stated that he didn't yet have the evidence to support this when he was essentially asked for a proper. Keep in mind that this was the first day of trial. Following the defendant's conviction, there was a direct challenge to the cross-examination of the officer, as I just described, and an argument that the defendant had not been proved guilty beyond a reasonable doubt. That was handled by private counsel. A first post-conviction petition was filed in 2001. Among the claims were that counsel had been ineffective for failing to call certain witnesses. Again, this matter appeared before Judge White, who dismissed it summarily at the first stage. This court remanded for a second stage proceeding. At the second stage proceeding, the petition was amended by privately retained counsel. There was additional discussion of a witness, Tammy Rainey Marion, whose brother, Ricky Marion, also provided an affidavit during these proceedings. Ms. Marion indicated that she had been a roommate with the complainant and that the complainant had said that she had been beaten by her boyfriend, who was a police officer, and threatened that she would not be allowed to tell anybody that. Also, Ms. Marion's brother, Ricky Rainey, provided an affidavit stating that he had dated the complainant for a four-month period and that she had indicated that she was too drunk to know what had happened and didn't recall the incident. This petition was dismissed at the second stage by Judge Rozak, who also heard the matter at the third stage. In 2009, this court reversed and remanded. This court stated, among other things, that the record clearly showed that Fahill said that Brenner was his attorney. The record did not show that the defendant waived the conflict or that the defendant was even advised of the conflict. And the court rejected as a matter of law the state's claim that the fact that there had been no appearance entered by Mr. Brenner on behalf of Mr. Fahill indicated that there was no conflict with Mr. Brenner's representation of the incident defendant. The matter was remanded, and this court ordered that, if possible, Fahill and Brenner should both testify as to their relationship. This court also ordered that Mr. Brenner should testify as to the reasons that he did not call the witnesses, Rainey and Marion in particular, and another witness, Lisa Jurgensen, who was effectively withdrawn as part of the court's consideration because of an indication in the other two witnesses that they had spoken with counsel, but that was lacking in Ms. Jurgensen's petition or in her affidavit. For Brenner and Fahill, nobody could find them, or they were not available to testify at the evidentiary hearing? There was about a five-year search in particular for Mr. Brenner. There were at least ten continuances where defense counsel, first private and public defender, indicated that they had been looking for him. They thought they had a phone number at one time, but he hung up on the caller. They thought they had a post office box and staked that out. They weren't able to obtain his presence at the hearing. Mr. Fahill was briefly, not before the court, but I believe in the courthouse, and counsel for the state and defense were able to talk to him. I believe this was in 2009, maybe 2008. He subsequently is not findable by anybody. So who has the burden of proof? Because whoever needed to produce those witnesses is the one that's going to suffer from their absence. Who's the burden of proof on for the third stage? The burden of proof is the same of both the second and the third stage, and that is for the defendant to make a substantial showing of a constitutional violation. This had already been done at the second stage. When it goes to the third stage, that's the opportunity, and the language I believe in Cleveland was that this is the time where the state is permitted to present rebuttal of witnesses. At the second stage, it's all taken as a matter of fact, from a well-pleaded document, that we take the defendant's arguments as true. At the third stage, then, the state has the opportunity to attack that evidence and to rebut it. The state did not rebut this evidence at all. In fact, who would have benefited most by this and who had the burden at that time to demonstrate that the defendant's prima facie case basically was not capable of presenting a substantial violation was the state. Thank you. As far as the representation of Brunner, or Fahill by Brunner, there was some indication that Fahill testified that Brunner was his lawyer, but then said he stopped representing him. Was that the testimony at the trial? That wasn't testimony at trial. That came, I believe, in Mr. Fahill's trial. At the third stage hearing, the state presented docket sheets from Mr. Fahill's proceedings. Mr. Fahill apparently had indicated, and that would have been to Judge Lockhart, not to Judge White, who heard the trial. But Fahill indicated at one point, I believe on the 19th when his matter was before the court, so right about the same time that this trial was occurring, Fahill indicated that he had an attorney, but he quit. Those docket sheets show that now Judge Levis had appeared on the defendant's behalf on the 10th of November, about nine days before Mr. Fahill said that he had an attorney, but that attorney quit. And I know that the public defender had previously been rejected by the court. After that time, there is no appearance by counsel. It was continued a number of times, and ultimately the defendant on his own entered a guilty plea and was given the negotiated plea that had been agreed, and the terms of which were known to the instant court by the time of trial. Can you repeat that for me? I'm very sorry. Who presented the facts from the co-defendant's trial? I believe those were presented by the state at the third stage hearing. The docket sheets were provided to the court at that time and are a part of this record. So that was relevant, the court accepted that information from the other case? Yes. At the third stage, after this court had indicated that it saw no reason not to call the witnesses because they would serve as impeachment witnesses, and after this court said that the record clearly showed that Fahill said that Brenner was his attorney, that the defendant had not waived the conflict, and that as a matter of law, the failure to enter an appearance did not mean there was no conflict, this matter then went to the third stage before the circuit court, and again this was presided over by Judge Rozak. And at that same time, then the state, after the hearing finally occurred after about a five year delay, the state argued that there was no appearance by Brenner in Fahill's case, that if there had been that he had withdrawn before trial, as indicated by the defendant's comments, that there was no showing that they met, that there was no showing that any payments were made, and that regarding the witnesses, that that was a matter of strategy, or at least it must have been by Mr. Brenner. The circuit court denied the post-conviction petition, and regarding strategy commented that perhaps the trial counsel had not wanted to call Mr. Rainey in particular because of the tattoos that he had, and that had apparently been a discussion contained within Mr. Rainey's affidavit that the attorney had expressed some concern about his tattoos, he said he would cover them up. It is the defendant's contention at this stage that the circuit court erred when it denied the defendant's post-conviction petition at the third stage, because the defendant made a substantial showing of a constitutional violation of the right to conflict-free counsel and the right to effective counsel. The facts in this case are not disputed, and thus the review by this court is de novo. What is at issue are the inferences that can properly be drawn by this court, and this court has already somewhat set that stage. When it said at the second stage that as a matter of law, the fact that the defendant, the fact that Brenner had not entered an appearance in Fahill's case did not mean that there was not a conflict, and when the court indicated that the fact that he may have withdrawn immediately before the defendant's trial does not matter and does not mean that there isn't a conflict, because it's a question of whether there's a contemporaneous representation at the time of the defendant's trial or in matters related to his trial, and this was clearly that. In terms of whether or not payment had been made, again, there's no factual dispute that that hasn't been shown, but payment doesn't matter, and there has never been a requirement that there be a demonstration of a written agreement between the defendant and his counsel, and in fact, the case by Judge Rozak that perhaps these two hadn't even met, where Fahill was able to identify Mr. Brenner in open court as his attorney clearly demonstrated his knowledge and his relationship with him. Regarding the second question, and again, at trial, counsel indicated that he wanted to cross-examine the complainant regarding her relationship with the Chicago Heights police officer. He indicated that he didn't have the evidence to back that up. That was Mr. Glasgow, but Glasgow clearly had that evidence because the affidavits of Rainey and Marion indicate that they had presented their knowledge to Mr. Brenner, who apparently did not convey that to Mr. Glasgow. This is clearly something, and this court has indicated, that would have been of benefit to counsel and would have been capable of impeaching the complaining witness. In its absence, the defendant was prejudiced by counsel's ineffective performance. And regarding the court's suggestion that it was the tattoos of Mr. Rainey that prevented trial counsel from calling him as a witness, I would note that that didn't stop the state from calling Mr. Fahill, who apparently had sufficient tattoos, that that was part of the bonding he testified to between him and the defendant. Given that the defendant made a substantial showing of a constitutional violation that has gone completely unrebutted by the state, the defendant has been prejudiced by the trial court's finding, by the conflict-free counsel. This is the third time that this petition has come before this court in a 20-year period. It should now be remanded for a new trial because the defendant demonstrated a substantial violation of his constitutional rights. If there are no further questions. Your Honors, Counsel, this case indeed has been around for 20 years, and I would draw your attention to this court's order on direct appeal, finding that there was sufficient evidence to prove this defendant's guilt. Part of that evidence was physical evidence, blood and DNA found in the defendant's car that matched the complaining witness, who, granted, apparently had gotten intoxicated, got in the car with this man, and whatever argument ensued, he beat her up. He was charged with and convicted of attempted murder. Now, as far as the third stage hearing in this case, you're remanded for an evidentiary hearing. Judge Rozak conducted a hearing. However, the defendant didn't present any evidence. Whether or not they could find Mr. Burner or Mr. Fahill, you know, found, but can't get him in the court, the fact remains that there was no evidence presented by the defendant to meet his burden of proof. The trial judge relied on some affidavits that had been attached to his petition and heard the arguments of the state. The state presented some non-evidence, I guess you would say, because there were no jail records showing Mr. Burner ever went to the jail to see Mr. Fahill. I grant you that standing alone, the fact that there's no appearance by Mr. Burner, might not be sufficient. There were no phone records. That alone might not be sufficient, and there was no evidence whatsoever that Mr. Burner actually represented Mr. Fahill. The standard here is whether or not the trial judge's decision at this stage is against the manifest way of the evidence. And I would point you again to the trial judge's written decision in this case, denying post-conviction rules. And he acknowledges, all right, I went through everything as much as I possibly could in several parts, more than once. As to the pro se conflict, there is at best, I can tell, absolutely no appearance that was ever filed on behalf of Mr. Fahill by Mr. Burner. I realize that this is not determinative. And he goes on to the things that, standing alone, are not determinative, but nevertheless are an indication whether or not Mr. Burner ever as far as the allegations of ineffective assistance of counsel. He points to the physical evidence at the trial. For example, I just said the DNA, blood evidence, complaints, testimony is inconsistent with what the defendant now says his witness would testify to. Well, even if we get over the hurdle that calling witnesses is a matter of trial strategy, this witness would have testified inconsistent with the evidence introduced at trial. That alone is reason for a defense attorney not to call that witness. There could be many reasons why we don't want to call that witness. That's why the bottom line decision is up to trial counsel. At this evidentiary hearing, there was nothing submitted into evidence that would lead anyone to believe that his judgment call, his strategy, was incorrect based upon the evidence introduced at trial that was listed in this court's order on direct appeal. Again, I invite you to read in total the trial judge's written decision, and I submit and cannot conclude that this decision is against the manifest weight of the evidence when there isn't any evidence. I have one quick question. The state is trying to prove that something doesn't exist, which is hard to do. In your brief on page five, you say it's well settled that a trial court may properly take judicial notice of matters of record in its own proceedings and that the court records are public documents. You cite Knight and White. So do you think the trial court properly looked at what was said in the other case in Fahill in concluding that there's no evidence he entered into appearance? Because the court had to look at another case to make that determination. Do you think that was proper? I think he has the discretion to do that. I think the law says that he may do that in other cases pending in that court, just as this court may take judicial notice. Sometimes the judge may say something or do something in another case that is relevant. In this case. You might. Particularly when you're searching for evidence. That's why evidence of the attorney not going to the jail to visit this client or not entering in appearance becomes relevant. In and of themselves, each point may be not determinative, but when you put them all together, the only conclusion you can come to is this attorney didn't represent Mr. Fahill. And without that, without the actual simultaneous representation, there's no per se conflict of interest, which is what he has argued. Thank you, Your Honor. May it please the court, counsel? Counsel's introductory comment regarded the strength of the evidence in the case, but when we're dealing with a per se conflict of interest here between counsel and the attorney, there's no per se conflict which requires that this matter be reversed and remanded. The state also commented that the evidence in its view was incredibly strong. But I would note that the state quickly jumped on the availability of Mr. Fahill, demonstrating its concerns about the strength of the case based upon the testimony of the complainant alone and the other evidence that it had available. Mr. Fahill was offered a deal in which he served only probation, even though he had been on bond when he committed the offense that he'd been arrested for, and even though his two previous trips to the Department of Corrections had been for a period of five years and for seven years. The state agreed to speak with the DOC, which apparently agreed to not file a petition to revoke his probation or his MSR. The state made all these accommodations to Mr. Fahill, thus demonstrating his importance to their case and also demonstrating the extreme prejudice that occurred to Mr. Smato when Mr. Brenner, in fact, represented both of them at the same time. The state has also, again, reiterated its argument that this is a question of whether or not it was a manifest error by the trial court. But the cases that have been submitted to the court, including cases submitted by the state, demonstrate that whereas here there is not a question of fact that this is a matter of de novo review. And this court has already stated as a matter of law that the defendant has made a substantial demonstration of a constitutional violation, both in terms of the conflict of interest and given that it's per se, at that point, if that's what this court finds, the analysis stops. It doesn't matter what the strength of the case is. But going on to the witnesses that were not called, again, this is a clear issue of defense counsel's ineffectiveness in failing to call witnesses that he submitted through co-counsel was the primary theory on which the defendant was operating and indicated that he didn't have that evidence on the day of trial, when in fact that evidence had been made available to Mr. Brenner, according to the affidavits of at least two of the witnesses. Given that this court stated that the presumption of strategy had been overcome by the defendant at the second stage, and given that defense counsel indicated that he intended to call those witnesses, but then failed to, clearly his ineffectiveness was demonstrated and the prejudice to the defendant was clear because in the absence of that evidence, there was really nothing to indicate that it was the defendant who had caused the harm to the complainant. Given that the defendant has made a substantial showing of a constitutional violation that has gone unrebutted in any fashion by the state, the defendant has met his burden and this matter should be remanded for neutral. Thank you.